### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **TCM ENTERPRISES, LLC** <br> 8149 LEWIS AVE #671 <br> Temperance, Michigan 48182 <br><br> Plaintiff, <br><br> vs. <br><br> **PUFCREATIV, LLC** <br> c/o Johnathan N. Shute <br> 2009 S. Raleigh Street <br> Denver, CO 80219 <br><br> Defendant. | CASE NO.: <br><br> JUDGE <br><br> **PLAINTIFF'S COMPLAINT** <br><br> Kevin C. Urtz (0096100) <br> Howard B. Hershman (0020986) <br> MOCKENSTURM, LTD. <br> 1119 Adams Street <br> Toledo, OH 43604 <br> Phone: (419) 724-3499 <br> Fax: (419) 724-3495 <br><br> *Counsel for Plaintiff,* <br> *TCM Enterprises, LLC* |

Now comes Plaintiff, TCM Enterprises LLC, by and through its undersigned counsel, and for its Complaint against Defendant, PufCreativ LLC, alleges and avers as follows:

### PARTIES

1. Plaintiff is a Michigan limited liability company with its principal place of business located in Monroe County, Michigan.

2. The member of Plaintiff is a citizen of the State of Michigan.

3. Upon information and belief, Defendant, PufCreativ, LLC, is a limited liability company incorporated in the State of Colorado, with its principal place of business in Denver, Colorado.

4. Upon information and belief, each member and/or sub-member of PufCreativ, LLC, is a citizen of the State of Colorado, and/or is not a citizen of the State of Michigan.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and it is an action between citizens of different states.

6. This Court has personal jurisdiction over Defendant based upon its continuous conduct of business within the State of Michigan.

7. Venue properly lies in this Court under 28 U.S.C. §1391, as Defendant solicits and/or conducts business in this District and a substantial portion of the events or omissions giving rise to Plaintiff's claims at issue occurred within this District.

## STATEMENT OF FACTS

8. Plaintiff realleges and incorporates by reference the allegations made in the foregoing paragraphs as if fully rewritten herein.

<u>Plaintiff's Business and Website</u>

9. Since 2014, Plaintiff has been engaged in the business of selling and distributing high quality portable vaping products.

10. Plaintiff's products are available to its customers through its website: https://o2vape.com/.

11. Through Plaintiff's website, customers are able to view and purchase Plaintiff's products.

12. Historically, Plaintiff has generated a significant number of sales through its website.

13. Plaintiff has invested significant resources in its website and surrounding marketing over the last 10 years.

<u>Plaintiff's Contract with Defendant</u>

14. In July of 2023, Plaintiff was introduced to Defendant through a third party who has done business with both Plaintiff and Defendant.

15. Defendant thereafter solicited Plaintiff's business and offered to provide Plaintiff certain online marketing services, including website design and management, search engine optimization ("SEO") and other marketing services to Plaintiff.

16. On or about August 13, 2023, the parties entered into a Marketing Services Agreement (the "Agreement"), whereby Defendant agreed to provide certain

marketing and website management services, including, but not limited to, website management and design, search engine optimization, product photography, and e-mail marketing, to Plaintiff in exchange for Plaintiff's payment to Defendant. A true and accurate copy of the Marketing Services Agreement is attached as **Exhibit "A"**.

17. Per the Agreement, Plaintiff paid Defendant set monthly fees for the foregoing services.

18. Pursuant to Paragraph 8 of the Agreement, Defendant warranted that "its services shall be performed by personnel possessing professional competency consistent with applicable industry standards."

19. Unfortunately for Plaintiff, Defendant's services fell well below the applicable industry standards.

20. In May of 2024, Defendant re-launched Plaintiff's website in order to improve the performance of Plaintiff's website.

21. In designing Plaintiff's new website, Defendant failed to mitigate substantial risks to the performance of the website.

22. Defendant altered the site map of the website without migrating all pages and content, resulting in over 150 webpages that were not migrated.

23. Defendant changed all of Defendant's URLs without regard to the impact it would have on traffic and search indexing on websites like Google.com.

24. Due to the combination of a CMS (content management system) migration and website rebrand, the website architecture should have been maintained as close to 1:1 as possible, but Defendant failed to do so.

25. Defendant's actions were grossly negligent and created a substantial risk to the performance of Plaintiff's website.

26. The new website prepared by Defendant was also slower, was not optimized for mobile viewing, and had large sections that were broken where a customer would be unable to order a product.

27. When confronted with the websites issues, Plaintiff was regularly told by Defendant that the issues were caused by changes in Google's algorithms and that the website was working as intended.

28. In reality, Defendant's actions led Plaintiff's website to experience a massive decline in organic traffic, post-migration. Daily clicks decreased by 60-80%, while impressions fell by 50-60%, reflecting major visibility losses on search engines. The impact on high-intent pages was particularly severe, with lost clicks on core product pages reducing purchase intent traffic by over 40,000 clicks over the course of six months.

29. In the 3 months before migration, there were 116 core traffic driving pages that generated 36,000 clicks and 2.4 million impressions. Post-migration those same pages are now generating 0 impressions (and thus 0 clicks).

30. Because of Defendant's wholly inadequate performance, Plaintiff terminated the Agreement, pursuant to Paragraph 5, on or about August 28, 2024.

31. Because of Defendant's wholly inadequate performance, Plaintiff has experienced a recognizable loss of website traffic, sales, and has incurred significant expense to repair the work performed by Defendant.

Damage to Plaintiff's Business

32. Following Plaintiff's termination of the Agreement, and due to the poor performance of Plaintiff's website during and following the term of the Agreement, Plaintiff hired an independent third party to evaluate the services provided by Defendant.

33. This audit confirmed that Defendant failed to perform its services in a manner consistent with the minimum industry standards.

34. For example, when Defendant updated Plaintiff's website on May 28, 2024, Defendant failed to update and maintain Plaintiff's existing URLs and instead simply replaced them all.

35. Any competent provider in Defendant's industry would have known that simply replacing Plaintiff's URLs would have a major negative impact on Plaintiff's online presence and visibility.

36. Defendant's changes eliminated all of Plaintiff's previously accrued SEO power through websites such as Google.

37. Nearly every major URL was redirected to something new, causing Plaintiff's sitemap structure to change substantially (150+ pages were not migrated and many URLs changed/recreated).

38. As a result, Google had to completely re-index Plaintiff's website and lost certain pages where Plaintiff's customers would have previously been sent.

39. Defendant's grossly negligent conduct and its failure to observe the minimum industry standards has caused a 50% to 60% overall loss of visibility for Plaintiff's website.

40. Further, Defendant failed to migrate all of Plaintiff's products and offerings leading to additional loss of business.

41. Defendant failed to insure that the website was working properly, even though they were paid a monthly fee to do so. The result is that many of Plaintiff's products could not be purchased through the website.

42. As it stands today, Plaintiff reasonably estimates that Defendant's foregoing conduct and gross negligence has caused damages of over $500,000 including costs to repair the negligent work, loss of revenue and profits, and loss of accrued goodwill and SEO power.

## COUNT ONE:
## BREACH OF CONTRACT AND EXPRESS WARRANTY

43. Plaintiff realleges and incorporates by reference the allegations made in the foregoing paragraphs as if fully rewritten herein.

44. A contract existed between the parties, in which Defendant agreed to provide certain marketing and website management services to Plaintiff, including, but not limited to: website management and design, search engine optimization, product photography, and e-mail marketing.

45. In exchange for Defendant's services, Plaintiff paid Defendant fees on a monthly basis.

46. Plaintiff fulfilled its obligation under the Agreement by, among other ways, promptly communicating with Defendant as necessary and paying Defendant per the terms of the Agreement.

47. Defendant breached the Agreement by, among other ways, failing to ensure that its services were provided in a manner consistent with applicable industry standards and providing services that actually harmed Plaintiff's online presence and marketing.

48. Specifically, Defendant's breach has caused a 50% to 60% overall loss of visibility for Plaintiff's website.

49. Further, Defendant eliminated 116 core traffic driving pages that generated 36,000 clicks and 2.4 million impressions.

50. As a direct and proximate result of Defendant's breach of contract, Plaintiff has been damaged in an amount to be proven at trial.

51. Plaintiff reasonably estimates that Defendant's breach of the Agreement has directly resulted damages of at least $500,000, including work to repair the damage caused by Defendant, lost revenue and profits, and damage to Plaintiff's goodwill and accrued SEO power.

## COUNT TWO:
## NEGLIGENCE/GROSS NEGLIGENCE

52. Plaintiff realleges and incorporates by reference the allegations made in the foregoing paragraphs as if fully rewritten herein.

53. Defendant owed a duty to Plaintiff to exercise reasonable care and judgment when providing services to Plaintiff and to ensure that its services were provided in a manner consistent with applicable industry standards.

54. Defendant breached its duties by, among other ways, failing to ensure that its services were provided in a manner consistent with applicable industry standards and providing services that actually harmed Plaintiff's online presence and marketing.

55. Defendant failed to even properly test the work it was providing to Plaintiff and failed to maintain a staging site to find and eliminate errors in programming.

56. Defendant knew or should have known that the services being provided by Plaintiff fell far below the applicable industry standards and would cause harm to Plaintiff's business.

57. Upon confrontation regarding these issues, Defendant regularly made false statements regarding the causes of these issues.

58. Upon information and belief, Defendant provides services and/or employs individuals who it knows do not possess the adequate skill and professionalism necessary to deliver the services it agreed to perform. As a result, Defendant has consciously disregarded the duties owed to Plaintiff and the certain harm that its sub-par services would cause to Plaintiff.

59. As a direct and proximate result of Defendant's negligence and/or its gross negligence, Plaintiff incurred significant pecuniary damage in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, TCM Enterprises, LLC, requests judgment and damages against Defendant, PuffCreativ, LLC, as follows:

a. On all Counts, judgment for compensatory damages in an amount to be proven at trial;

b. An award for reasonable attorneys' fees and costs, including but not limited to expert witness fees and court costs;

c. An award of pre- and post-judgment interest on any awards at the statutory rate; and

d. Any such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

*/s/ Kevin C. Urtz*
Kevin C. Urtz (0096100)
Howard B. Hershman (0020986)
MOCKENSTURM, LTD.
1119 Adams Street
Toledo, OH 43604
Phone: (419) 724-3499
Fax: (419) 724-3495
kevin@mockltd.com

*Counsel for Plaintiff,*
*TCM Enterprises, LLC*